**Tommy Earl KELLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00159–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 21, 1993.

Tony Aninao, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron, Tommy Lafon, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, WILSON and DUNN, JJ.

## OPINION

DUNN, Justice.

A jury found appellant, Tommy Earl Kelley, guilty of attempted murder. After appellant pled true to the enhancement paragraphs, the court assessed punishment at 30 years. We affirm.

Appellant was tried for the attempted murder of his girlfriend, Sharon Wilson. Their relationship, characterized as stormy and violent, had lasted approximately 10 years and had produced two children. On prior occasions, Wilson had stabbed appellant.

On August 6, 1991, Wilson and appellant had an on-again, off-again argument lasting nearly eight hours. During the early part of the argument, Wilson cut appellant with a razor, for which he received medical treatment from an emergency medical technician with the Houston Fire Department. The record reflects that appellant told the EMT, "That b_____ cut me. You know I'm going to kill the b_____." Later, appellant borrowed a loaded gun from his neighbor and, accompanied by his sister and new girlfriend, located Wilson in the apartment's parking lot. Wilson testified she heard appellant tell his companions

that he was going to kill her and that they encouraged him to kill Wilson. Appellant shot Wilson four times, and she suffered wounds to her head and chest.

In four points of error, appellant complains that the trial court erred by not granting a mistrial when the prosecutor misstated the law of self-defense during jury argument and during voir dire, and when the prosecutor commented on appellant's failure to testify. He also complains that the trial court erred when it failed to include an instruction of the lesser included offense of attempted voluntary manslaughter.

Appellant's first and third points of error complain about the prosecutor's closing argument. He complains, in the first point of error, that the prosecutor argued a misstatement of the law of self-defense.

■ To be permissible, jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex.Crim.App. 1990); *Gonzales v. State*, 807 S.W.2d 830, 835 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

During closing, the prosecutor made the following comments:

> And the first thing about the only theory that the Defendant can show you in court, which may even entitle him to the self-defense theory, is that he reasonably believed that he was under an attack or an attempted attack, because as the evidence shows from all the records, everything that you've heard, you've heard that the confrontation, when he approached her with the gun out there in the parking lot, she wasn't charging him, she wasn't going toward him; in fact, he was approaching her in the parking lot. She had a bottle in her hand. She was waving it around at him. She didn't have it cocked back in her arm like she was going to try to hit him. She wasn't trying to hit his sister or his new girlfriend, who were also standing out there in the parking lot with him. She wasn't

> attacking at that time. She wasn't attempting to attack. And what you have to decide, based on the evidence you've heard in court today, is whether or not you thought the Defendant's belief was reasonable.

> And the instructions in the charge are very clear on how you do that. It says by the term "reasonable belief," as used herein, it is meant, "A belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant." **It doesn't say whether it was reasonable for this Defendant to believe that [sic] whether or not a reasonable and prudent person would believe that.** Ladies and gentlemen, we don't have to—

> [defense counsel objects that argument is contrary to jury charge—reads portion of charge to jury; court sustains objection, instructs jury to disregard, and denies motion for mistrial.]

After the objection, the prosecutor continues:

> Ladies and gentlemen, Mr. Aninao [defense counsel] has pointed out another indication or aspect of the self-defense. You are to place yourself in the shoes of the Defendant and look at the circumstances which were available to him at that time. And, ladies and gentlemen, those circumstances are uncontroverted because the—because the witnesses that I brought to court weren't inconsistent as to what happened out there in the parking lot, and **Mr. Aninao didn't bring any witnesses which controverted what my witnesses had to say.**

> [court overrules defense counsel objection that prosecutor's statements are a comment on defendant's failure to testify; counsel asks for no other relief.]

The prosecutor continues:

> What I mean is Defendant's girlfriend or new girlfriend and sister were in the parking lot. He didn't bring them to court and say, "that's not what happened." The State's witnesses, Sharon Wilson and Cornelius Cappasono, both testified that there was no altercation, physical altercation, or any threat made

by the complaining witness out in the parking lot where this Defendant shot her. That's uncontroverted in the record. There's no evidence to suggest that she attacked him in any way, or even threatened any type of attack.

(Emphasis on statements to which counsel objected.)

Misstatement of Law

■■■ It is not error for the State to quote or paraphrase the jury charge. *Whiting*, 797 S.W.2d at 48. However, an argument that contains a statement of the law contrary to the court's charge is error and is to be analyzed in light of TEX. R.APP.P. 81(b)(2). *Id.* at 49; *Burke v. State*, 652 S.W.2d 788, 790 (Tex.Crim.App. 1983).

■■■ A review of the record indicates that the definition given by the prosecutor is verbatim from the jury's charge previously read to them by the court. The statements to which defense counsel objected were an attempt by the State to explain to the jury the concept of reasonable belief. Appellant argues that the prosecutor's comments suggested to the jury that the prior assaults by Wilson on appellant should be disregarded when determining the reasonableness of appellant's actions when he shot Wilson. This argument is not supported in the record and lacks merit. The prosecutor said, "It doesn't say whether it was reasonable for this Defendant to believe that [sic] whether or not a reasonable and prudent person would believe that." There is no suggestion in the prosecutor's statements that prior assaults on appellant should be disregarded.

Point of error one is overruled.

Comment on Failure to Testify

■■■ An improper jury argument is reversible error if, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Gonzales*, 807 S.W.2d at 835 (citing *McKay v. State*, 707 S.W.2d 23, 38 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986)).

Citing *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App.1984), the Court of Criminal Appeals recently reiterated the criteria to be used in assessing whether a prosecutor's argument was a comment on the defendant's failure to testify in contravention of TEX.CODE CRIM.P.ANN. art. 38.08 (Vernon 1979). *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex.Crim.App.1991), *cert. denied*, ── U.S. ──, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). In *Caldwell*, the court noted:

> It is now well settled in this State that for the argument or comment of the prosecuting attorney to offend against Art. 38.08, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that the language used might be construed as an implied or indirect allusion thereto. The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify.

*Id.*

■■■ In applying the *Dickinson* standard, the objectionable comment must be analyzed from the standpoint of the jury. *Id.* Appellant argues that the jury could have interpreted the comment as an impermissible reference to his failure to testify. If this is true, such a comment would be a violation of his right against self-incrimination. However, the prosecutor's statement can be reasonably interpreted as a comment on appellant's failure to bring either his sister or his new girlfriend to testify on his behalf. Therefore, the statement is not of such a character that the jury would naturally and necessarily take it to be a comment on appellant's failure to testify. There was testimony from the State's witnesses that these two individuals were present during most of the evening and during the time Wilson was shot. The prosecutor may comment in his final jury argument on the failure of a defendant to call a competent and material witness,

when it is shown that such witness was available to testify on behalf of the defendant, but was not called by the defendant. *Albiar v. State,* 739 S.W.2d 360, 362–63 (Tex.Crim.App.1987). "The rule has long been extended to encompass references to the failure of the accused to call competent and material witnesses, whose existence is reflected in the record, who could support or buttress a defensive theory." *Id.*

We find the statement would not *necessarily* and *naturally* be understood by the jury to refer to appellant's failure to testify, and therefore the statement passes the *Dickinson* test, and the prosecutor's comments were proper.

Point of error three is overruled.

Court's Failure to Quash the Jury Panel

In his second point of error, appellant complains of the trial court's failure to quash the jury panel when the prosecutor allegedly misstated the law of self-defense.

During voir dire, the prosecutor examined one of the venire members about the importance of the time element when considering self-defense:

> State: I shot you or I stabbed you, and a month later you see me on the street and I don't have a gun and I don't have a knife, I'm not threatening you with any type of deadly force. At that point in time do you think you have a right to use deadly force against me? At this time do you think you have a right to come up and shoot me or stab me?
>
> Venire member: If I still got that in me, I would.
>
> State: You think—
>
> Venire member: I might be done forgot it, you know.
>
> State: Let me ask you this: You might want to shoot me or want to stab me—I think everyone can agree with that—but under the law, do you think you're entitled to shoot me or stab me?
>
> Venire member: No.
>
> State: That one-month separation in time, that makes a difference, doesn't it?
>
> Venire member: Right.
>
> State: What if it was one hour, do you think that makes a difference?

> Venire member: Yes, that would make a difference.
>
> State: You think if it was just one hour, you think you would still be able to use a gun or knife on me?
>
> Venire member: To me, if I was still mad with you, I would shoot you.
>
> State: I understand that, but do you think it's legal to do that? I mean we could all understand why someone—if someone struck out at me, I would want to strike out at them. I think we all understand that logic. **But under the law, the law says you can only use deadly force if you are being threatened with deadly force and someone's unlawful use of that.** So if you walk up to that person an hour later, and they don't have a gun and they don't have a knife, they don't have any type of deadly weapon, they're not using deadly force against you at that time, are they?
>
> Venire member: No.
>
> State: And you can't use deadly force against them?
>
> Venire member: No.
>
> State: Everyone understands that situation?
>
> Venire member: I wouldn't do it then.
>
> State: You understand separation of time makes a big difference, and **that the only time that you're entitled to self-defense is when someone is using deadly force against you?**
>
> [Defense counsel objects to the omission of a reasonable apprehension of the defendant of serious bodily injury or death; court sustains objection, gives instruction to disregard, but denies defendant's motion to quash the panel.]

After the objection, the prosecutor continues:

> Ladies and gentlemen, the Judge told you that's what the purpose of the jury charge is, is that you're going to get the discussion of the law. The important distinction that I think you need to understand is the separation of time, and that there has to be the use of force for someone to be entitled to use deadly force.

(Emphasis on portion to which defense counsel objected.)

 During the voir dire, appellant failed to object to the prosecutor's first comments about which he now complains on appeal. Therefore, he has waived any objection he may have had regarding those comments. TEX.R.APP.P. 52(a). Concerning the comments on which the objection was properly preserved, we agree that the comments are a misstatement of the law.

A misstatement of the law during voir dire will warrant reversal only if the appellant was harmed by the statements. *Carlson v. State*, 695 S.W.2d 695, 697 (Tex.App.—Dallas 1985, pet. ref'd); *see Bedford v. State*, 666 S.W.2d 574, 578 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). In *Williams v. State*, 622 S.W.2d 116, 119 (Tex.Crim.App.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982), the trial court itself misstated the law to the prospective jurors during voir dire, yet the Court of Criminal Appeals held that the error did not warrant reversal because, among other things, the error did not harm the defendant. If the court erred in failing to quash the panel because of the prosecutor's misstatements, this Court must reverse appellant's conviction unless we determine beyond a reasonable doubt that the error made no contribution to the conviction. TEX.R.APP.P. 81(b)(2).

The record does not suggest that appellant was harmed by these statements or by the subsequent rulings made by the trial court. At defense counsel's request, the court instructed the venire to disregard the prosecutor's comments. The record also reflects that on many other occasions during the voir dire, the prosecutor emphasized that **attempted** use of force and not just the use of force was a necessary element in self-defense.

Point of error two is overruled.

Failure of Trial Court to Instruct on Lesser Included Offense of Attempted Voluntary Manslaughter

Appellant argues for reversal of his conviction because the trial court failed to include an instruction on the lesser in-cluded offense of attempted voluntary manslaughter. Appellant failed to object to the charge and failed to request the instruction. As appellant made no request for the instruction on the lesser included offense, we are not to consider it on appeal. *Thomas v. State*, 701 S.W.2d 653, 656 (Tex. Crim.App.1985).

Point of error four is overruled.

The judgment is affirmed.